<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

—————————————————————
                             :
MICHAEL K. SLATEN,           :
                             :
        Plaintiff,           :
                             :        Civil Action No. 06-1660 (JAG)
              v.          :
                             :           **OPINION**
COMMISSIONER OF SOCIAL    :
SECURITY ADMINISTRATION,  :
                             :
                             :
        Defendant.       :
—————————————————————:

<u>**GREENAWAY, JR., U.S.D.J.**</u>

Plaintiff Michael K. Slaten ("Plaintiff") seeks review of the Social Security Commissioner's (the "Commissioner") decision denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments, pursuant to 42 U.S.C. §§ 405(g)[1] and 1383(c)(3). Plaintiff asserts that substantial evidence exists in the record to support a finding of disability, pursuant to §§ 405(g) and 1382, and that the Commissioner failed to carry her burden at the fifth step of the sequential evaluation process. For the reasons set forth in this Opinion, this Court finds that the Commissioner failed to carry her burden at the fifth step. This matter shall be remanded for further consideration, consistent with this Opinion.

———————————————

[1] This section of the Social Security Act (hereinafter the "Act") provides that any individual may obtain review of any final decision of the Secretary made subsequent to a hearing to which he or she was a party. The federal district court for the district in which the plaintiff resides is the appropriate place to bring such action. 42 U.S.C. § 405(g).

# I. **PROCEDURAL HISTORY**

On September 19, 2003, Plaintiff filed applications for DIB and SSI payments, pursuant to Sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act, codified as 42 U.S.C. §§ 416(i), 423, 1382c(a)(3)(A), respectively.  (Tr. 59-61, 271-73.)[2]  Plaintiff's application alleged that he was disabled as of June 1, 2003, as a result of his obesity.  (Tr. 67.)  Plaintiff's claims were denied initially on November 14, 2003, and upon reconsideration on March 12, 2004.  (Tr. 35, 42.)  Plaintiff timely filed a hearing request on February 8, 2004.  (Tr. 46.)  Plaintiff's hearing was held before Administrative Law Judge ("ALJ") Gerald J. Ryan, who later denied Plaintiff's claims in a decision dated May 19, 2005.  (Tr. 24-30.)

ALJ Ryan concluded that Plaintiff was "not entitled to a period of disability, Disability Insurance Benefits, and not eligible for Supplemental Social Security Income Payments under Sections 216(i), 223, 1602, [sic] and 1614(a)(3)(A) respectively of the Social Security Act."  (Tr. 30.)  ALJ Ryan found that:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2004.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's morbid obesity, degenerative knee disorder, hypertension and sleep apnea are considered "severe" based upon the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c).

---

[2] The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision.  42 U.S.C. § 405(g).  "Tr." refers to said transcript.

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The claimant has the following residual capacity: sit up to 6 hours in an 8 hour workday; stand and walk up to 2 hours in an 8 hour workday; and lift and carry up to 10 pounds.  The claimant has the ability to understand, carry out and remember simple instructions; to respond appropriately to supervision, coworkers and usual work situations; and to deal with changes in a routine work setting.

7.    The claimant is unable to perform any of his past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

8.    The claimant is a "younger individual" (20 C.F.R. §§ 404.1563 and 416.963).

9.    The claimant has a "high school (or high school equivalent) education" (20 C.F.R. §§ 404.1564 and 416.964).

10.   The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. §§ 404.1568 and 416.968).

11.   The claimant has the residual functional capacity to perform substantially all of the full range of sedentary work (20 C.F.R. §§ 404.1567 and 416.967).

12.   Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, Medical-Vocational Rule 201.21, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13.   The claimant's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations.  Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

14.   The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

3

(Tr. 29-30.)

Plaintiff sought review of ALJ Ryan's decision on June 1, 2005.  (Tr. 20.)  On March 10, 2006, Plaintiff's request was denied by the Appeals Council.  (Tr. 5.)  Accordingly, ALJ Ryan's decision became the Commissioner's final decision.  On April 7, 2006, Plaintiff filed a complaint in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the Commissioner's decision.

## II.  <u>STATEMENT OF THE FACTS</u>

**A.**   <u>**Background**</u>

Plaintiff Michael Keith Slaten was born on February 4, 1959.  (Tr. 64.)  Plaintiff was forty-four years old when he applied for DIB and SSI, and forty-six years old when ALJ Ryan rendered his decision.  (Tr. 64, 28.)  Plaintiff has a twelfth grade education, and his past work includes employment as a baggage handler and a security guard.  (Tr. 71, 68.)  Plaintiff's longest employment was as a security guard for eight years, working eight-hour shifts, six days a week.  (Tr. 68.)  He noted that his work as a security guard required him to sit for one hour a day, stand for two hours and walk for four hours.  (<u>Id.</u>)  Additionally, Plaintiff spent three hours reaching and one hour writing, typing, or handling small objects.  (Tr. 69.)  However, Plaintiff did not lift or carry items.[3]  (<u>Id.</u>)  Plaintiff also worked as a baggage handler for two years, working eight-hour shifts, seven days a week.  (Tr. 68.)  Plaintiff stopped working in June 2003.  (Tr. 67.)

**B.**   <u>**Claimed Disabilities**</u>

---

[3] Plaintiff noted in one section of his application that his job required no lifting or carrying, but then stated in response to a different question that he frequently carried loads weighing less than ten pounds.  (Tr. 69.)

4

In his original disability report dated September 19, 2003, Plaintiff claimed that his disability commenced on June 1, 2003, due to obesity, high blood pressure, blood in his stool, breathing problems, and pain in his back, legs, and feet.  (Tr. 67.)  On March 14, 2005, before ALJ Ryan, Plaintiff testified that he was unable to work because of breathing problems and an inability to stay awake during the day.  (Tr. 291.)  Plaintiff also noted that he experiences pain in his knees that limits his ability to stand up for a long period of time.  (Id.)  Plaintiff testified he could stand for five or ten minutes, and sit for approximately one hour.  (Tr. 300.)

Plaintiff testified that he is able to take care of his personal needs, but at a slow pace, and that he could lift ten or twenty pounds.  (Tr. 298-99.)  Further, Plaintiff noted he has been trying to take walks, but the pain in his knees does not allow him to walk that far.  (Tr. 299.)  The pain in his knees is not constant, but comes and goes depending on how long he walks or stands.  (Tr. 301.)

Plaintiff also testified that he has trouble sleeping and wakes up every fifteen minutes.  (Tr. 303.)  Plaintiff noted that he has been diagnosed with severe sleep apnea.  (Tr. 304.)  As a result, Plaintiff testified, he falls asleep three or four times during the day.  (Id.)

**C.**     **Medical Evidence Considered by the ALJ**

ALJ Ryan discussed Plaintiff's consultations with Dr. David Tiersten and Dr. Sonal Jain.

1.     Dr. David Tiersten

Dr. Tiersten conducted an internal medicine examination of Plaintiff on February 9, 2004.  (Tr. 127.)  Plaintiff was referred to Dr. Tiersten by the Division of Disability Determination.  (Id.)

At the examination, Plaintiff's chief complaint was dyspnea[4] when walking half a block.  (Id.)  Dr. Tiersten noted that two years prior, Plaintiff was diagnosed as suffering from sleep apnea.[5]  (Id.) Plaintiff complained that for six months he had constant bilateral throbbing pain in his lower back that radiated to his knees.  (Id.)  For a period of three to four months, Plaintiff complained that he suffered constantly from similar quality pains, in both his knees and ankles.  (Id.)  For a period of three months, Plaintiff had frontal headaches.  For six months, he suffered from ankle edema.[6] (Id.)  Two years prior to Dr. Tiersten's evaluation, Plaintiff was diagnosed as suffering from hypertension.  (Id.)

Dr. Tiersten reported that in 2003 Plaintiff went to Newark Beth Israel Hospital because he was experiencing difficulty walking.  (Id.)  However, at the time Dr. Tiersten evaluated Plaintiff, Plaintiff was not using a crutch, cane, or walker.  (Id.)  Dr. Tiersten observed that Plaintiff did not appear to be in acute distress.  (Tr. 128.)  Plaintiff had a slow waddling gait, with a hunched stance, but was able to walk on his heels and toes.  (Id.)  While Plaintiff could only squat eighty-five percent due to knee pain, he did not use an assistive device and he needed no help changing for the examination, getting on and off the exam table, or rising from a chair.  (Id.)  Further, Plaintiff's chest and lungs were normal, and his heart showed a regular rhythm.  (Id.)  However,

---

[4] Dyspnea, also called breathlessness, is "a distressful sensation of uncomfortable breathing that may be caused by certain heart conditions, strenuous exercise, or anxiety." MOSBY'S MEDICAL, NURSING & ALLIED HEALTH DICTIONARY 563 (6th ed. 2002) (hereinafter "Mosby's").

[5] Sleep apnea is "a sleep disorder characterized by period in which respiration is absent. The person is momentarily unable to contrace [sic] respiratory muscles or to maintain airflow through the nose and mouth." Mosby's, at 1592.

[6] Adema is "the abnormal accumulation of fluid in interstitial spaces of tissues." Mosby's, at 571.

pain in Plaintiff's hips limited the flexion extension of his hips and knees.  (Tr. 129.)  The

dorsiflexion[7] and plantar flexion[8] of Plaintiff's right ankle were zero degrees, due to ankle pain,

while his left ankle movements were normal.  (Id.)  Dr. Tiersten noted Plaintiff had full strength,

rated as 5/5, in his upper and lower musculoskeletal extremities.  (Id.)

    Although Plaintiff experienced bilateral ankle edema, there were no significant

varicosities[9] or trophic changes,[10] and no muscle atrophy was evident.  (Id.)  Plaintiff's hand and

finger dexterity were intact, and he maintained a 5/5 grip strength bilaterally.  (Id.)  Dr. Tiersten

diagnosed Plaintiff with hypertensive arteriosclerotic[11] cardiovascular disease with congestive

heart failure; sleep apnea; osteoarthritis of the spine, knees and ankles; headaches; morbid obesity;

and epilepsy, NOS.[12]  (Id.)  His prognosis was guarded.  (Id.)  Dr. Tiersten noted Plaintiff is

---

[7] Dorsiflexion is "upward or backward flexion of a part of the body."  Mosby's, at 545.

[8] Plantar flexion is "a toe-down motion of the foot at the ankle.  It is measured in degrees from the 0-degree position of the foot at rest on the ground with the body in a standing position." Mosby's, at 1351.

[9] Varicosity is "an abnormal condition, usually of vein, characterized by swelling tortuosity." Mosby's, at 1794.

[10] Tropic changes pertain to "a nutritive effect on or quality of cellular activity." Mosby's, at 1756.

[11] Hypertensive arteriosclerosis is "a form of arteriosclerosis complicated by a buildup of the muscular and elastic tissues of the arterial walls caused by hypertension."  Mosby's, at 850. Hypertension is "a common disorder characterized by elevated blood pressure persistently exceeding 140/90 mm Hg."  Id. at 849.  Arteriosclerosis is "a common disorder characterized by thickening, loss of elasticity, and calcification of arterial walls."  Id. at 134.

[12] When several core features of a particular diagnosis present themselves, but individual characteristics do not give rise to any one subcategory, a description of "NOS," meaning "Not Otherwise Specified," is given.  A diagnosis followed by "NOS" does not put the principal diagnosis in doubt.  Honorable Jessie B. Gunther, *Reflections On The Challenging Proliferation Of Mental Health Issues In The District Court And The Need For Judicial Education*, 57 Me. L.

"unable to perform physical activities requiring exertion beyond mild."  (Tr. 130.)

    2.   <u>Dr. Sonal Jain</u>

On January 5, 2005 Dr. Jain conducted a physical residual functional capacity examination of Plaintiff.  (Tr. 244.)  At the time, Plaintiff's symptoms included knee pain, chest pain, and shortness of breath.  (Tr. 240.)  The pain in both knees was associated with walking, while he experienced occasional chest pain and a shortness of breath upon exertion.  (<u>Id.</u>)  Dr. Jain did not find Plaintiff to be a malingerer.  (Tr. 241.)  He found Plaintiff's impairments to be reasonably consistent with the symptoms and functional limitations described in the examination.  (<u>Id.</u>)  Dr. Jain noted that during a typical workday, Plaintiff's attention and concentration would occasionally be interrupted by bouts of pain.  (<u>Id.</u>)  He concluded that Plaintiff was capable of low stress jobs.  (<u>Id.</u>)

Dr. Jain estimated that because of Plaintiff's impairments, he could not walk one city block without resting or experiencing severe pain, and that Plaintiff could only sit for thirty minutes at a time, and stand for five minutes at a time.  (<u>Id.</u>)  Dr. Jain indicated that Plaintiff could sit, stand, and walk less than two hours in an eight-hour workday.  (Tr. 242.)  Also, Dr. Jain observed that Plaintiff must use a cane or other assistive device while engaging in occasional standing or walking.  (<u>Id.</u>)  Plaintiff could lift less than ten pounds frequently, but could only lift more weight than that rarely.  (<u>Id.</u>)  Plaintiff could twist or stoop occasionally, but could crouch, squat, climb ladders, or climb stairs rarely.  (Tr. 243.)  Plaintiff did not have significant limitations "reaching, handling or fingering."  (<u>Id.</u>)  Dr. Jain estimated that, on average, Plaintiff was likely to miss more than four days of work per month as a result of his impairments.  (<u>Id.</u>)  Overall, Dr.

---

Rᴇᴠ. 554,  n.43 (2005) (defining NOS).

Jain diagnosed Plaintiff with hypertension, obstructive sleep apnea, and morbid obesity.  (Tr. 240.)

  3. <u>Additional Medical Evidence</u>

  Plaintiff received treatment at Newark Beth Israel Medical Center from July 15, 2003 to July 16, 2003.  (Tr. 99-122.)  Plaintiff went to the hospital due to pain and swelling in his left ankle.  (Tr. 106.)  Upon discharge, Plaintiff's principal diagnosis was atypical chest pain.  (Tr. 102.)  His other diagnoses included hypertension, morbid obesity, and left ankle pain.  (<u>Id.</u>)  Overall, his condition improved during the period of hospitalization.  (<u>Id.</u>)

  From August 1, 2004 to August 4, 2004 Plaintiff was treated at Newark Beth Israel Medical Center.  (Tr. 142.)  Plaintiff's principal diagnoses included atypical chest pain, accelerated hypertension, obstructive sleep apnea, and morbid obesity.  (Tr. 184.)  Plaintiff's discharging doctor, Dr. William Van Wyck, noted that "[Plaintiff's] condition [had] improved."  (Tr. 228.)

## III. <u>DISCUSSION</u>

**A.** <u>**Standard of Review**</u>

  This Court has jurisdiction to review the Commissioner's decision, pursuant to 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Stunkard v. Sec'y of Health and Human Services</u>, 841 F.2d 57, 59 (3d Cir. 1988); <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (<u>quoting</u> <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of

9

evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court must consider the totality of the

evidence and then determine whether there is substantial evidence to support the Commissioner's

decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).  Furthermore, the reviewing

court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-

finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom.

Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir.

1984)).

        In determining whether there is substantial evidence to support the Commissioner's

decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses

and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)

subjective evidence of pain testified to by the claimant and corroborated by family and neighbors;

(4) the claimant's educational background, work history and present age."  Blalock v. Richardson,

483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).  Where

there is substantial evidence to support the Commissioner's decision, it is of no consequence that

the record contains evidence which may also support a different conclusion.  Blalock, 483 F.2d at

775.

**B.     Statutory Standards**

        The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. §

423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and

aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if

he is unable to "engage in substantial gainful activity by reason of any medically determinable

10

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). An impairment only qualifies as a disability if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

## C.     The Five Step Evaluation Process and the Burden of Proof

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[13] 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(ii)(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will

_____

[13] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

not be considered.  See id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If the claimant's impairment(s) meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[14] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.  Id.  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  In Burnett, the Third

---

[14] Hereinafter "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, claimant will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of vocational factors, such as age, education level, work history, and residual functional capacity.  These guidelines reflect the administrative notice taken of the jobs in the national economy that exist for particular combinations of vocational factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458, 462 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part

13

404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). Moreover, "the combined impact of the impairments will be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523; Parker v. Barnhart, 244 F. Supp. 2d 360, 369 (D. Del. 2003). However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits. See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability); see also Marcus v. Barnhart, No. 02-3714, 2003 WL 22016801, at *2 (E.D. Pa. Jun. 10, 2003) (stating that "the burden was on [Plaintiff] to show that the combined effect of her impairments limited one of the basic work abilities").

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as their interpretation in Jones, to every step of the decision. See, e.g., Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006). Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format." Id.

**D.     ALJ Ryan's Findings**

ALJ Ryan applied the five-step sequential evaluation and determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 24.)

14

1.     <u>Step One</u>

ALJ Ryan found that Plaintiff satisfied step one of the sequential evaluation because he "ha[d] not engaged in any substantial gainful activity since his alleged onset date."  (Tr. 25.)

2.     <u>Step Two</u>

Regarding step two, ALJ Ryan found that "the medical evidence indicates that the claimant has morbid obesity, degenerative bilateral knee disorder, hypertension and sleep apnea, impairments that are 'severe' within the meaning of the Regulations . . . ." (<u>Id.</u>)

3.     <u>Step Three</u>

ALJ Ryan concluded that Plaintiff's impairments were "not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  (<u>Id.</u>)  ALJ Ryan noted that Plaintiff was diagnosed with hypertension, but was being treated with various medicines.  (<u>Id.</u>)  While Plaintiff's blood pressure readings had been elevated, ALJ Ryan concluded there was "no evidence of congestive heart failure or ischemic heart disease."  (<u>Id.</u>)  Plaintiff was hospitalized twice with chest pains that were determined to be atypical.  (Tr. 26 (citation omitted).)  However, at the time of his second hospitalization, in August 2004, it was discovered that Plaintiff had run out of his hypertensive medication, and was no longer taking it.  (<u>Id.</u>)  An echocardiogram taken in October 2004 revealed "severe concentric left ventricular hypertrophy, but cavity size and systolic function were normal and left ventricular ejection fraction was 70-75%."  (<u>Id.</u> (citation omitted).)  Overall, ALJ Ryan noted, "the evidence does not establish that the claimant has hypertensive cardiovascular disease which is compatible to the requirements specified in sections 4.02, 4.03 or 4.04."  (<u>Id.</u>)

15

Next, ALJ Ryan considered Plaintiff's degenerative bilateral knee disorder.  The results of Plaintiff's bilateral knee X-rays taken in December 2005 showed degenerative changes.  (Id. (citation omitted).)  However, because Plaintiff "ambulates without any assistive devices" and has a "full range of motion of his spine and normal strength in his lower extremities," ALJ Ryan concluded that Plaintiff's bilateral knee impairment "is not compatible with the level of severity contemplated in section 1.02A."  (Id.)

4.     Step Four

In determining whether Plaintiff retained the residual functional capacity to perform his past work, ALJ Ryan first took note of Plaintiff's lifestyle, including eating habits, sleeping patterns, and physical limitations.  (Id.)  Plaintiff was morbidly obese, standing at five feet, nine inches tall and weighing 449 pounds.  (Id. (citation omitted).)  Plaintiff's polysomnography,[15] performed in November 2004, confirmed that he suffered from obstructive sleep apnea.  (Id. (citation omitted).)  ALJ Ryan found Plaintiff's assertions of pain "are reasonable to a degree," but explained that "the overall record does not support them to the debilitating extent asserted." (Tr. 27.)

Plaintiff's representative, Theresa Vicente,[16] argued at the hearing that Plaintiff was limited to sedentary work, and that, due to fatigue during the daytime, his concentration and

---

[15] Polysomnography is "the polygraphic recording during sleep of multiple physiologic variables, both directly and indirectly related to the state and stages of sleep, to assess possible biological causes of sleep disorders."  Mosby's, at 1370.

[16] Theresa Vicente represented Plaintiff at his hearing before ALJ Ryan on March 14, 2005.  (Tr. 287.)  Ms. Vicente, who is not an attorney, represented Plaintiff under the supervision of Alma Yee, Esq.  (Tr. 58.)  On June 3, 2005, Plaintiff retained Robert J. Ryan as his attorney.  (Tr. 19.)  Presently, Plaintiff is represented by Abraham S. Alter, Esq.  (Pl. Br. at 32.)

ability to follow instructions were severely limited.  (Id.)  ALJ Ryan considered this argument, but ultimately concluded that, in addition to there being no evidence that Plaintiff has a mental impairment, "there is no reason to believe that he is not capable of performing, simple tasks expected in unskilled work activity."  (Id.)

ALJ Ryan next considered Plaintiff's physical conditions.  Ms. Vicente reported that Plaintiff's body mass index ("BMI"), since 2003, was between sixty-five and sixty-eight.  (Id. (citations omitted).)  This BMI exceeded Level III, which is termed "extreme" obesity.  (Id.) However, ALJ Ryan noted, "These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss."  (Id. (emphasis in original).)  Ms. Vicente conceded that Plaintiff could perform sedentary work, while Dr. Tiersten "assessed that [Plaintiff] was capable of mild physical activity."  (Id. (citations omitted).)  ALJ Ryan agreed with Dr. Tiersten that Plaintiff's morbid obesity and other physical impairments precluded anything more than mild physical activity.  (Id.)

ALJ Ryan did not "give any weight" to the residual function capacity assessment conducted by Dr. Jain.  (Id.)  ALJ Ryan noted that Dr. Jain's assessment "is not consistent with objective medical evidence or other evidence. The [Plaintiff] while limited has not been shown to be incapacitated which this assessment essentially indicates."  (Id.)  ALJ Ryan found Plaintiff's fatigue, pain, shortness of breath, and ability to lift and carry no more than ten pounds to be reasonable, but could not find a reason why "the [Plaintiff] could not perform sedentary work which entails mostly sitting and lifting and carrying of ledgers, paper, etc. of no more than ten pounds."  (Id.)  However, ALJ Ryan did not believe that Plaintiff could return to his past work as a baggage handler, security guard and medical driver because their exertional demands exceeded Plaintiff's residual functional capacity.  (Tr. 28.)

5.      Step Five

As a result of his conclusions at step four, ALJ Ryan proceeded to step five of the analysis. ALJ Ryan noted that Plaintiff was forty-six years old, a younger individual.  (Id. (citations omitted).)  Plaintiff has a high school (or high school equivalent) education, but no transferable skills from past relevant work.  (Id.)  ALJ Ryan suggested Plaintiff was capable of sedentary work that involved lifting no more than ten pounds at a time, and occasionally lifting or carrying articles like docket files.  (Id.)  A sedentary job also involves sitting, and a certain amount of occasional walking and standing.  (Tr. 29.)  Therefore, "because the [Plaintiff] has the exertional capacity to perform substantially all of the requirements of sedentary work, and considering the claimant's age, education, and work experience, a finding of 'not disabled' is supported by application of Medical-Vocational Rule 201.21."  (Id.)  ALJ Ryan finally concluded, "there are jobs, existing in significant numbers in the national economy, which the claimant is able to perform. For all the foregoing reasons . . . [Plaintiff] retains the capacity to adjust to work that exists in significant numbers in the national economy."  (Id.)

E.      **Analysis**

Plaintiff contends that ALJ Ryan's decision should be reversed because his decision is not supported by substantial evidence.  Specifically, Plaintiff contends that ALJ Ryan wrongly dismissed his treating physician's residual functional capacity ("RFC") assessment, and that ALJ Ryan's own RFC is not supported by substantial evidence.  (Pl. Br. at 10, 17.)  Plaintiff also argues that the Commissioner did not carry her burden at the fifth step of the sequential evaluation because there was no vocational expert testimony in the record.  (Id. at 22.)

This Court finds that ALJ Ryan properly dismissed Plaintiff's treating physician's RFC and that there is ample evidence to substantiate ALJ Ryan's RFC.  However, the Commissioner

did not carry her burden at the fifth step of the sequential evaluation because there was no vocational expert testimony in the record.

1.    Whether the ALJ Wrongly Dismissed Plaintiff's Treating Physician's RFC Assessment

Plaintiff contends ALJ Ryan wrongly dismissed his treating physician's RFC.  Plaintiff claims the "ALJ is obligated to tell us what evidence contradicts the treating physician's [RFC] assessment while keeping in mind that a treating physician's opinion takes precedence over other evidence."  (Id. at 12.)  According to Plaintiff, "[n]othing recited by the ALJ would seem to indicate that Dr. Jain's [RFC] is contradicted by the evidence of record."  (Id. at 14.)

It is acceptable for an ALJ to reject the opinion of a treating physician, "so long as the rejection is based on other medical evidence, not on personal inferences or speculation."  Acosta v. Barnhart, 142 F. App'x 613, 616 (3d Cir. 2005) (citing Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000)).  Further, the ALJ can "reject a treating physician's opinion *outright* only on the basis of contradictory medical evidence."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted) (emphasis added).  "When a conflict in the evidence exists, however, the ALJ may choose whom to credit provided that [he] considers all the evidence and gives some reason for discounting the evidence [he] rejects."  Fouch v. Barnhart, 80 F. App'x 181, 185 (3d Cir. 2003) (citing Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1998)).

Based upon the record, it is clear that ALJ Ryan's rejection of Dr. Jain's[17] RFC was

_____

[17] Plaintiff states that Dr. Jain is Plaintiff's treating physician at Newark Beth Israel Medical Center, and that his assessment is that of the "physician that knows plaintiff the best." (Pl. Br. at 12.)  An ALJ is supposed to give great weight to the evidence offered by a treating physician.  Acosta, 142 F. App'x at 399.  Further, "because treating physicians are 'most able to provide a detailed longitudinal picture of a claimant's medical impairment(s)' and accordingly

grounded in other medical evidence. ALJ Ryan noted that Dr. Jain's assessment "is not consistent with objective medical evidence or other evidence." (Tr. 27.) This assessment is sufficient to discount Dr. Jain's RFC. See Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981) (Cotter II) (noting that the "ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice"). Yet, ALJ Ryan went further, noting that Plaintiff's stress test was normal, and that his chest x-ray showed clear lungs and a normal heart. (Tr. 27.)

Additionally, the record shows other contradictory medical evidence. Dr. Jain indicated Plaintiff could only sit, stand, or walk for less than two hours total in an eight-hour workday. (Tr. 242.) However, a separate RFC determined Plaintiff could sit for six hours, and stand or walk for at least two hours, in an eight-hour workday. (Tr. 137.) While Dr. Jain noted it was necessary for Plaintiff to use a cane or other assistive device, Dr. Tiersten observed that Plaintiff was not using an assistive device. (Tr. 242, 128.) Plaintiff even admitted in his hearing testimony that he does not use any assistive devices such as cranes, crutches, braces, splints, or walkers. (Tr. 301.) Dr. Jain noted Plaintiff could climb ladders and stairs rarely. (Tr. 243). Yet, the record shows that Plaintiff could occasionally climb ramps, stairs, and ladders. (Tr. 138).

Dr. Jain observed Plaintiff was capable of low stress jobs. (Tr. 241.) ALJ Ryan accepted

---

bring a 'unique perspective' to the medical evidence, their opinions are controlling if well-supported and uncontradicted." Hollis v. Comm'r of Soc. Sec., 116 F. App'x 396, 399 (3d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).

It is unclear from the record whether Dr. Jain is Plaintiff's treating physician. The record contains only one instance where Plaintiff saw Dr. Jain. (Tr. 239-44.) It was on that occasion that Dr. Jain completed Plaintiff's RFC. It is unknown to this Court, and Plaintiff has not shown, whether Dr. Jain examined Plaintiff at any other time. For the purposes of this matter, this Court need not resolve whether Dr. Jain is Plaintiff's treating physician, as Dr. Jain's RFC is contradicted by other evidence in the record.

this finding, concluding Plaintiff was only capable of sedentary work.  (Tr. 27.)  ALJ Ryan's assessment that Plaintiff could perform sedentary work that entailed carrying ledgers, paper, or loads weighing no more than ten pounds was consistent with Dr. Jain's finding that Plaintiff could lift less than ten pounds frequently, and with Plaintiff's own statement that he could lift ten or twenty pounds.  (Tr. 242, 299).

As has been shown, the record contains contradictory medical evidence.  Thus, according to Plummer, ALJ Ryan could have rejected Dr. Jain's RFC in its entirety.  However, he chose not to do this, and instead only rejected the contradicted RFC findings.  ALJ Ryan did not accept Dr. Jain's findings as to Plaintiff's ability to sit, stand, and walk, and provided an explanation for discounting Dr. Jain's assessment.

Based on the foregoing, this Court finds that ALJ Ryan properly rejected portions of Dr. Jain's RFC.

     2.      Whether the ALJ's RFC was Supported by Substantial Evidence

Plaintiff argues that ALJ Ryan's analysis of Plaintiff's RFC was not supported by substantial evidence.  (Pl. Br. at 17.)  Plaintiff stresses that the ALJ did not recite certain portions of Dr. Jain's RFC or Dr. Tiersten's diagnoses.  (Id. at 20.)

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citations omitted).  In assessing a claimant's RFC, the ALJ must consider all relevant evidence.  Fargnoli v. Halter, 247 F.3d 34, 41 (3d Cir. 2001) (citations omitted).  Additionally, as Plaintiff notes, the ALJ is required to give a "clear and satisfactory explication of the basis on which [the residual functional capacity] rests."  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) (Cotter I).  Cotter II clarified Cotter I by explaining that the ALJ is required to "indicate that s/he

has considered all the evidence . . . and provide some explanation of why s/he has rejected

probative evidence which would have suggested a contrary disposition." <u>Cotter II</u>, 650 F.2d at

482.

 ALJ Ryan concluded that Plaintiff was capable of performing sedentary work.  (Tr. 27.)

To support this conclusion, ALJ Ryan relied upon the medical evidence indicating that Plaintiff

has morbid obesity, degenerative bilateral knee disorder, hypertension, and sleep apnea.  (Tr. 25.)

ALJ Ryan discussed Plaintiff's medications and hospitalizations, including the results from an

echocardiogram and X-ray tests. (Tr. 26 (citations omitted).)  ALJ Ryan also considered Plaintiff's

testimony at the hearing.  (<u>Id.</u>)  From the aforementioned, ALJ Ryan concluded, "the record as a

whole, considering all medical and non-medical elements, does not support the extent of the

[Plaintiff's] subjective complaints precluding all work activity."  (Tr. 27.)

 ALJ Ryan's decision satisfies both <u>Cotter I</u> and <u>Cotter II</u>.  ALJ Ryan twice noted that he

accepted Plaintiff's assertion of pain, but qualified his statements by expressing that "the overall

record does not support them to the debilitating extent asserted."  (Tr. 27.)  ALJ Ryan then cited

Plaintiff's own testimony as to his ability to conduct daily activities, including personal care and

cooking.  (<u>Id.</u>)  Additionally, ALJ Ryan considered Ms. Vicente's argument that Plaintiff was

limited to sedentary work, and that, due to daytime sleepiness and fatigue, Plaintiff's

concentration and ability to follow instructions was severely limited.  (<u>Id.</u>)  However, ALJ Ryan

rejected this argument because Plaintiff "has not alleged nor is there any evidence suggesting that

he has mental impairment which is affecting his concentration."  (<u>Id.</u>)  Last, ALJ Ryan noted,

"[Plaintiff's] representative conceded that he could perform, at best, sedentary work and Dr.

Tiersten, a consultive examiner, assessed that he was capable of mild physical activity."  (<u>Id.</u>)

This, together with Dr. Jain's RFC, allowed ALJ Ryan to conclude that Plaintiff was capable of

sedentary work.

Based upon ALJ Ryan's reasoning, it is clear that his decision was grounded in substantial evidence. ALJ Ryan set forth a reasoned basis, based upon the record, for concluding Plaintiff was capable of sedentary work. ALJ Ryan's analysis of Plaintiff's RFC is supported by substantial evidence.

    3.     <u>Whether the Commissioner Failed to Carry her Burden at the Fifth Step Because There Was No Vocational Testimony in the Record</u>

Plaintiff also contends that the Commissioner did not carry her burden at the fifth step of the sequential evaluation, since there was no testimony from a vocational expert in the record. (Pl. Br. 22.) Plaintiff argues that ALJ Ryan wrongly used medical-vocational guidelines, or "grids," as a framework to deny benefits. (<u>Id.</u> at 27.)

If, as here, an ALJ reaches step five of the sequential evaluation process, "the Commissioner bears the burden of showing that the claimant can perform other work which exists in the national economy, in light of [his] age, education, work experience, and residual functional capacity." <u>Hall v. Comm'r of Soc. Sec.</u>, 218 F. App'x 212, 215 (3d Cir. 2007) (citing 20 C.F.R § 404.1520(a)(4)(v)). Residual functional capacity is "that which an individual still is able to do despite the limitations caused by her impairments." <u>Id.</u> (citations omitted). The grids direct a finding of disabled or not disabled for each combination of age, education, work experience and RFC. <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix 2. "When the four factors in a claimant's case correspond exactly with the four factors set forth in the grids, the ALJ must reach the results the grids reach." <u>Hall</u>, 218 F. App'x 216 (citing <u>Sykes v. Apfel</u>, 228 F.3d 259, 263 (3d Cir. 2000); 20 C.F.R. § 404.1569 and Subpart P, Appendix 2, § 200.00). However,

        the grids establish, for exertional impairments only, that jobs exist in the national economy that people with those impairments can perform. When a

claimant has an additional non-exertional impairment, the question whether that impairment diminishes his residual functional capacity is functionally the same as the question whether there are jobs in the national economy that he can perform given his combination of impairments.  The grids do not purport to answer this question, and thus under [Heckler v. Campbell, 461 U.S. 458 (1983)] the practice of the ALJ determining without taking additional evidence the effect of the non-exertional impairment on residual functional capacity cannot stand.

Sykes, 228 F.3d at 270.  Further, "[i]n the absence of evidence in addition to the guidelines, the Commissioner cannot establish that there are jobs in the national economy that someone with the claimant's combination of impairments can perform."  Id. at 273.

Plaintiff argues that he possessed non-exertional limitations, and that therefore it was necessary for ALJ Ryan to rely upon a vocational expert as part of his five-step analysis.  If ALJ Ryan had found that Plaintiff possessed non-exertional limitations, Plaintiff is correct that at the fifth step the Commissioner would have had to take into account testimony from a vocational expert.  However, ALJ Ryan determined that "the [Plaintiff's] capacity for sedentary work is substantially intact and has not been compromised by any non-exertional limitations."  (Tr. 30.) Plaintiff's point of contention is really directed towards this finding.

Plaintiff argues that ALJ Ryan did not consider Plaintiff's non-exertional impairments. (Pl. Br. at 30.)  Specifically, Plaintiff points to his postural limitations as proof that he suffered from non-exertional limitations.  (Id.)  Under the regulations, impairments can be exertional, non-exertional or both. Impairments are classified as exertional if they affect the claimant's ability to meet the strength demands of jobs.  20 C.F.R. § 404.1569a (2003).  Non-exertional impairments affect a claimant's ability to meet the demands of a job other than the strength demands.  Id.  Non-exertional impairments include: (i) difficulty functioning because you are nervous, anxious or depressed; (ii) difficulty maintaining attention or concentration; (iii) difficulty understanding or

remembering detailed instructions; (iv) difficulty seeing or hearing; (v) difficulty handling physical features of a work setting, such as dust or fumes; or (vi) difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  20 C.F.R. § 404.1569a(c)(1)(i-vi).

The record shows that Plaintiff could occasionally twist or stoop, and rarely crouch, squat, climb ladders, or climb stairs.  (Tr. 243.)  These limitations should have been considered "postural" under 20 C.F.R. § 404.1569a(c)(1)(vi).  See Stunkard v. Sec'y of Health & Human Serv., 841 F.2d 57, 61-62 (3d Cir. 1988) (holding that claimant's inability to stoop, crouch, or kneel constitute postural, and therefore non-exertional, limitations).  It is unclear whether ALJ Ryan considered these limitations in his finding that Plaintiff's capacity for sedentary work had not been compromised by any non-exertional limitations.

Thus, this Court finds that ALJ Ryan should have found that Plaintiff possesses non-exertional limitations.  Accordingly, ALJ Ryan's use of the grids at the fifth step of the sequential evaluation to find that Plaintiff can perform other jobs is contrary to the Third Circuit's holding in Sykes and constitutes reversible error.  On remand, ALJ Ryan must take into consideration "the testimony of a vocational expert or other similar evidence, such as a learned treatise" in order for the Commissioner to "meet the burden of establishing that there are jobs in the national economy that a claimant with exertional and non-exertional impairments can perform."  Sykes, 228 F.3d at 273.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence.  However, this Court finds, since Plaintiff had exertional and non-exertional limitations, ALJ Ryan should not have relied solely on the grids in step five of the analysis.  This matter must be remanded to the Commissioner for further proceedings consistent with this Opinion.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: September 8, 2008